Timothy P. Dillon, Esq. (SBN 190839)
Christine J. Gracco, Esq. (SBN 213980)
**DILLON MILLER AHUJA & BOSS, LLP**
5872 Owens Avenue, Suite 200
Carlsbad, California 92008
Telephone:  (858) 587-1800
Email: tdillon@dmablaw.com
        cgracco@dmablaw.com

Attorneys for Plaintiff,
Lynk Remote Technologies, LLC

'24 CV 0551 W    AHG

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNK REMOTE TECHNOLOGIES, LLC, a California limited liability company<br><br>            Plaintiff,<br><br>        vs.<br><br>SKY HARBOUR, LLC, a Delaware limited liability company<br><br>            Defendants. | Case No.: **'24 CV 0551 W    AHG**<br><br>**COMPLAINT FOR:**<br>**1.  BREACH OF CONTRACT**<br>**2.  DECLARATORY RELIEF**<br><br>Demand for Jury Trial |

Plaintiff, Lynk Remote Technologies, LLC ("Lynk" or "Plaintiff"), hereby alleges as follows:

## NATURE OF ACTION

1.      In this action, Plaintiff seeks damages for breach of the written contract entered into between Plaintiff and Defendant Sky Harbour, LLC ("Sky Harbour" or "Defendant").  Sky Harbour is part of the publicly-traded company Sky Harbour Group operating a network of "Home-Basing Solutions" for business aircraft, which leases and manages private hangars and dedicated services for home-based aircraft. Lynk specializes in delivering innovative IoT (internet of things) solutions for its customers.  Lynk was selected by Sky Harbour to design and deliver a customized white-labeled application to allow Sky Harbour's clients to have mobile and remote access to their private hangars.  Lynk delivered an application that meets or exceeds all agreed-upon requirements, yet Sky Harbour refuses to pay for services its clients use on a daily basis.

## JURISDICTION

2.      This court has original jurisdiction under 28 U.S.C. section 1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

3.      This court has personal jurisdiction over Defendant, because Defendant entered into its agreement with Plaintiff in this jurisdiction and a substantial portion of Plaintiff's performance of the agreement was done in this jurisdiction.

## VENUE

4.      Pursuant to 28 U.S.C. section 1391(b)(2) and (3), venue is proper in this District in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district and no other venue is more appropriate.

5.      Plaintiff developed, managed and performed the software services required by the parties in this venue. Plaintiff entered into the parties' written

agreement in this jurisdiction and received payment in this jurisdiction.

## THE PARTIES

6.      Plaintiff is a <u>California</u> limited liability company. Plaintiff was formerly a Delaware limited liability company until it incorporated in California on January 8, 2020.  Plaintiff's principal place of business is located in San Diego County, State of California.

7.      On information and belief, Defendant Sky Harbour is a limited liability company incorporated under the laws of the State of Delaware, whose principal place of business is located in Westchester County, State of New York.

## GENERAL ALLEGATIONS

8.      Plaintiff is a technology company which creates "smart environments" for a variety of industries.  Pertinent here, Plaintiff develops and provides a mobile software application and related hardware which produces a "smart hangar" experience (the "Smart Hangar System") and also provides support, implementation and maintenance services for its Smart Hangar System.

9.      The Smart Hangar System allows users to remotely open and close hangar doors, turn on/off lights, adjust temperature settings, turn on/off fans, monitor live/historical security video, among other services.

10.     Upon information and belief, Defendant Sky Harbour develops and leases private aviation hangar infrastructure campuses at airports throughout the United States.

11.     In or around June 2022, Plaintiff and Defendant entered into a written Supplier Agreement ("Agreement") wherein Plaintiff was to develop and provide a white-label version of its Smart Hangar System ("Premium App") to Defendant, including hardware (cameras, wifi equipment, automated door/light/fan equipment) to be used at Defendant's various airport campuses. At the time of the Agreement, Defendant's campuses included those located at Miami Opa-locka Executive Airport

("OPF") and Nashville Airport ("BNA").

12.   During negotiations of the Agreement, Defendant advised Plaintiff that its Premium App would be rolled out to dozens of Sky Harbour's campuses, each providing Plaintiff additional income from hardware installation and software licensing. Defendant represented to Plaintiff that it would rapidly deploy Plaintiff's Premium App to more than 100 hangars, enticing Plaintiff with the promise of additional future revenue.

13.   Pursuant to the Agreement, Plaintiff customized its existing, fully-functional application to Sky Harbour's functionality requests.  The Agreement provided for a set of 14 functionality criteria, each of which Plaintiff fully delivered to Sky Harbour.

14.   Plaintiff agreed to the following material terms with Defendant:

(a) Delivery of a Premium App to Defendant and Defendant's tenants with smart hangar functionality when used with provided hardware;

(b) For the initial two airports (OPF and BNA) in Phase 1, Lynk delivered and oversaw installation of hardware compatible with the Premium App to deliver a smart hangar experience to Defendant's tenants; and

(c) Installation and maintenance support services, as applicable, for the Premium App and hardware.

15.   In addition to compensation to be provided to Plaintiff upon completion of certain milestones, pursuant to the Agreement, Defendant was required to pay a one-time Enterprise License fee for each hangar and a monthly Premium App service fee of $148,604 as of the date of the complaint with additional amounts accruing each month thereafter.

16.   Plaintiff performed the Agreement by, among other things, delivering the Premium App in a condition that performed or substantially performed in

conformance with the Agreement, and delivering and installing the requisite hardware at BNA and OPF in a form which was accepted by Defendant and is and was utilized by Defendant's customers.

17.    Plaintiff's performance went beyond the requirements of the Agreement.  In working with Sky Harbour in good faith, Plaintiff delivered Version 2.05 of its software that contained additional features and adjusted certain interface items requested by Sky Harbour.  Plaintiff delivered this version that went beyond the Agreement with the understanding that Sky Harbour would continue to roll out the Premium App into other hangars, mutually benefitting all parties.

18.    Plaintiff's Premium App was first deployed to Defendant's customers by Defendant in or around March 2023, when it sent a notice to its customers and began onboarding subscribers at the Nashville location.  Since that time, Sky Harbour's clients have been added to the Plaintiff's Premium App more than 50 times utilizing its services to conduct more than 19,000 app interactions in addition to more than 47,000 app interactions from individuals using @skyharbour.group email addresses.

19.    Defendant has only made partially payments for Plaintiff's services – and no payment at all since August 2023 despite the fact that it continues to utilize Plaintiff's Premium App and Services for its customers.  Plaintiff is informed and believes that Sky Harbour utilizes Plaintiff's Premium App to sell (or upsell) services to its customers and continues to collect monthly fees based in part on Plaintiff's Premium App.

20.    In August 2023, Plaintiff issued a Notice of Non-Payment to Sky Harbour demanding that it bring its outstanding balance current.  Sky Harbour has refused and continues to refuse to make full payment on the balance claiming it has not accepted the Premium App despite its use by dozens of its staff and customers.

21.    Defendant, as a publicly traded company, has informed its investors that Plaintiff's App is performing well.  On August 15, 2023, during a call with investors,

Sky Harbour's CEO Tal Keinan stated, "our tenants manage their space with an app that we designed and fielded and are constantly looking to refine. What the app does today is really kind of control the physical aspects of the hangar – temperature, humidity, lighting, you know it's got security, motion control, monitoring, motion detection – you know that sort of thing. The next version of the app will include service procurement – and that is a set of capabilities … that you know … the app is something that we're doing in house, but that will require a set of partnerships … and these are … our intentions are for these to be revenue producing partnerships …"

22.     Defendant claims it has never accepted the Premium App and has recently claimed it will not accept the Premium App unless and until it is analyzed by an "independent" third party. The alleged independent party seeks unreasonable access to the software code that is not required by the terms of the Agreement – which simply requires that the Premium App perform certain functions. In light of Sky Harbour's claims during the August 2023 investor call, Plaintiff is informed and believes Defendant seeks to obtain access to Plaintiff's proprietary intellectual property in an effort to reverse engineer or otherwise copy material portions of Plaintiff's code and user interface consistent with its CEO's claim to be building an "in house" version of the Premium App. Should Sky Harbour subvert the intention of the parties to roll out Plaintiff's Premium App to all of Sky Harbour's current and future facilities, Plaintiff will be denied potentially millions of dollars in lost licensing, installation and other fees due under the Agreement.

23.     Despite delivery of the Premium App and installation of hardware at the OPF and BNA facilities, Defendant has failed and refused, despite repeated requests from Plaintiff, to pay the full amount of installation and hardware fees, the Enterprise License fee, as well as the monthly Premium App service fee for the twelve (12) hangars located at OPF and nine (9) hangars located at BNA. Plaintiff is informed and believes Defendant has other hangars that are ready for installation of hardware

necessary to run Plaintiff's Premium App, which Defendant is withholding from Plaintiff under the bad faith claim Plaintiff's Premium App does not satisfy the requirements of the Agreement.

## FIRST CAUSE OF ACTION

### Breach of Contract

24.     Plaintiff re-alleges each and every paragraph of this Complaint as though set forth in full herein.

25.     On or about June 2, 2022, Plaintiff entered into the Agreement with Defendant.

26.     Following execution of the Agreement, Plaintiff did all, or substantially all, of the things that the Agreement required it to do, including developing and providing Defendant with the Premium App and providing, servicing, and installing requisite hardware.

27.     Plaintiff performed all material terms of the Agreement, except to the extent its performance was excused by Defendant's non-performance of material terms thereof, including the failure to deliver or provide hangars with reliable and acceptable internet connectivity.

28.     Defendant materially breached the Agreement by among other things: (1) failing remit complete payment for the Premium App; (2) failing to pay for hardware and installation; (3) failing to pay the Enterprise License fee; and (4) failing to pay the monthly Premium App service fees for Defendant's hangars.

29.     As of the filing of this Complaint, as a direct and proximate result of Defendant's breach of the Agreement, Plaintiff has suffered damages in an amount not less than $145,000.00.

///

///

///

COMPLAINT

## SECOND CAUSE OF ACTION

### Declaratory Relief

30.   Plaintiff re-alleges each and every paragraph of this Complaint as though set forth in full herein.

31.   On or about June 2, 2022, Plaintiff entered into the Agreement with Defendant.

32.   The Agreement provides for identification of certain "Deliverables", "Milestones", "Requirements", "Fees" and "Acceptance Criteria" pursuant to the terms of the Agreement.

33.   The Agreement further provides that Plaintiff is the owner of any and all "Supplier Software" (other than Defendant's name, trademarks, copyrights and logos) and that such Supplier Software and firmware (on hardware) is licensed to Defendant and Defendant's affiliates subject to the terms of the Agreement.

34.   Exhibit A to the Agreement sets for the parties Work Order No. 1 ("SOW 1"). SOW 1 was intended to Defendant to provide Plaintiff with 100 hangars to provide their hardware and software services.

35.   Pursuant to the Agreement, Plaintiff was to install certain hardware "Products" to convert standard airport hangars into "smart hangars" that utilized Plaintiff's Supplier Software. Plaintiff's Supplier Software could be utilized in a mobile application allowing Defendant's customers to connect to the internet, turn on/off lights and fans, open and close doors, monitor and set temperature, and stream video to Defendant's private hangars it leased to its customers ("1.0 Functionality"). The 1.0 Functionality list is contained at Section C of SOW 1.

36.   Plaintiff has delivered all Deliverables required by the Agreement that substantially conform to the 1.0 Functionality. Plaintiff has substantially met the Requirements and Milestones set forth in the Agreement in a timely manner (or has been excused from having to meet such Requirements and/or Milestones in a timely

manner).

37.   A dispute has arisen between the parties regarding the parties' rights and obligations pursuant to the Agreement, including:

a.   Plaintiff contends that it has substantially performed under the Agreement to deliver all Deliverables that meet the 1.0 Functionality required. Plaintiff is informed and believes Defendant will contend that Plaintiff has failed to meet the Acceptance Criteria so that Defendant is not obligated to pay Plaintiff under the Agreement for Plaintiff's substantial work.  Plaintiff seeks a declaration that it has substantially provided all Deliverables to meet the 1.0 Functionality such that it is entitled to all payments required under the Agreement, or, to the extent certain Deliverables were not delivered in strict conformance with the Agreement, that Plaintiff substantially performed or that the requirement for strict conformance was waived.

b.   Plaintiff contends that its Supplier Software and firmware installed on hardware and any work performed under the Agreement to develop the Deliverables are solely its intellectual property.  Plaintiff is informed and believes that Defendant contends that it is the owner of such intellectual property and that Defendant has made representations to its shareholders during public meetings that it is the owner of such intellectual property.  Plaintiff seeks a declaration as to its ownership rights in and to any and all Supplier Software and firmware, including any and all software and firmware developed during the course of the parties' relationship.

c.   Plaintiff is informed and believes Defendant is in the process of (or intends to) reverse engineer Plaintiff's Supplier Software, firmware and/or Deliverables to avoid payment of the Fees and to evade Plaintiff's ownership of such intellectual property. Plaintiff seeks a declaration as to its rights to prevent Defendant from utilizing its intellectual property in a way to create its own version to subvert

the parties' Agreement and to avoid Plaintiff's ownership rights.

        d.     Plaintiff contends that Defendant's nonpayment of the Fees permit it to shut down further access to its software application. Plaintiff seeks a declaration of its rights to terminate further performance under the Agreement due to Defendant's nonpayment.

      38.    Defendant requested Plaintiff to make changes to its software application to provide functionality different from the 1.0 Functionality set forth in the Agreement. Plaintiff made certain changes to its 1.0 Functionality related to the user interface and has provided additional functionality as part of a good faith effort to maintain the parties' relationship. Plaintiff's additional services have not been compensated by Defendant to date. Plaintiff recently deployed an updated version of its software application ("2.05 Functionality") that is being used by Defendant and Defendant's customers without compensation. Plaintiff seeks declaratory relief from this Court regarding the following:

        a.     Plaintiff is informed and believes that Defendant claims an ownership right in and to the 2.05 Functionality created by Plaintiff. Plaintiff seeks a declaration of its rights to sole ownership of any and all intellectual property rights in and to the 2.05 Functionality, including any rights in and to the software application created by Plaintiff;

        b.     Plaintiff is informed and believes that Defendant claims Plaintiff is not entitled to payment for work on the 2.05 Functionality separate from that set forth in the Agreement. Plaintiff seeks a declaration as to its rights to receive compensation for any and all work done to provide Defendant with requested functionality that is not contained as party of the 1.0 Functionality in the Agreement.

        c.     Plaintiff is informed and believes that Defendant claims it can continue to utilize the 2.05 Functionality version of the software application developed by Plaintiff. Plaintiff seeks a declaration as to its rights to terminate further

use by Defendant and Defendant's customers of the 2.05 functionality application at any time due to Plaintiff's ownership rights to the software application.

## PRAYER

**WHEREFORE, Plaintiff prays for judgement against Defendant as follows:**

1.  For a declaration of Plaintiff's rights as follows:

    a.  That Plaintiff substantially provided all Deliverables to meet the 1.0 Functionality such that it is entitled to all payments required under the Agreement, or, to the extent certain Deliverables were not delivered in strict conformance with the Agreement, that Plaintiff substantially performed or that the requirement for strict conformance was waived;

    b.  That Plaintiff has sole ownership rights in and to any and all Supplier Software and firmware, including any and all software and firmware developed during the course of the parties' relationship;

    c.  That Plaintiff may prevent Defendant from utilizing its intellectual property in a way to create its own version to subvert the parties' Agreement and to avoid Plaintiff's ownership rights;

    d.  That Plaintiff may terminate further performance under the Agreement due to Defendant's nonpayment;

    e.  That Plaintiff has sole ownership of any and all intellectual property rights in and to the 2.05 Functionality, including any rights in and to the software application created by Plaintiff;

    f.  Plaintiff is entitled to compensation for any and all work done to provide Defendant with requested functionality that is not contained as party of the 1.0 Functionality in the Agreement; and

///

g.   That Plaintiff may terminate further use by Defendant and Defendant's customers of the 2.05 Functionality at any time due to Plaintiff's ownership rights to the software application.

2. For damages in an amount according to proof at trial;

3. For pre-judgment interest;

4. For attorneys' fees and costs;

5. For costs of suit incurred herein; and

6. For such other and further legal or equitable relief as this Court deems just and proper.

Dated:  March 22, 2024                    DILLON MILLER AHUJA & BOSS, LLP

                                          By: _____
                                              Timothy P. Dillon, Esq.
                                              Attorney for Plaintiff

COMPLAINT